UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| Stephen V. COLLINS, and | ) | Case No. 08-20315 |
| Cynthia J. COLLINS, | ) | |
| Debtors | ) | |
| | ) | |
| | ) | |
| | ) | Adversary Proceeding |
| Stephen V. COLLINS, and | ) | Case No. 10-02064 |
| Cynthia J. COLLINS, | ) | |
| Plaintiffs | ) | |
| vs. | ) | |
| | ) | |
| WEALTHBRIDGE MORTGAGE CORP. | ) | |
| and | ) | |
| MARIX SERVICING, LLC, | ) | |
| Defendants | ) | |

**Memorandum of Decision: Liability of Marix Servicing for Discharge Injunction Violations**

Introduction

On a stipulated record, plaintiffs Stephen and Cynthia Collins and defendant Marix Servicing, LLC seek a determination of Marix's liability for violations of the Bankruptcy Code's discharge injunction.[1] The Collins', Chapter 7 debtors, assert that eight letters sent by Marix after they received their discharge violated the injunction imposed by 11 U.S.C. §524. Marix claims that each of the letters was required by applicable state law, and was not coercive or harassing. Therefore, Marix argues, the letters do not violate the discharge injunction and Marix is not liable for damages.[2]

---

[1] References to the "Bankruptcy Code" or the "Code" are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. § 101, et seq. Statutory section citations not otherwise identified are to sections of the Code.
[2] Original defendants named in the complaint, Citimortgage, Inc. and Citicorp Trust Bank, FSB, were dismissed from this proceeding February 16, 2011. Defendant Wealthbridge Mortgage Corporation received an

As explained in the following pages, I conclude that Marix's letters to the Collins' violate the discharge injunction. Therefore, we shall convene a hearing to determine appropriate compensatory sanctions.

Facts[3]

The Collins' filed for relief under chapter 7 of the Bankruptcy Code in April, 2008. They scheduled the mortgage on their property located in Lyman, Maine as a claim, and sent notice of the case to Citicorp, the then servicer of the mortgage. The Collins' expressly stated their intent to surrender the property pursuant to §521(a)(2). Shortly after the case commenced, Citicorp sought and obtained relief from the automatic stay, with the consent of the Collins' and the Chapter 7 Trustee, in order to pursue its state law rights[4]. Thereafter, Citicorp served the Collins' with a state court foreclosure action complaint. The debtors received their discharge on July 8, 2008. A foreclosure judgment entered in favor of Citicorp on October 27, 2008. The redemption period on the property ended January 28, 2009.[5]

Marix acquired the servicing rights for the mortgage on the Lyman property in October, 2010, and had notice of the Collins' chapter 7 discharge the same day. After the assignment took effect, Marix sent a series of letters to the Collins' that constitutes the subject matter of this proceeding. The first letter, entitled "Validation of Debt", contained information notifying the debtors of the transfer of the loan, the amounts due under the note, and pertinent information for

---

Entry of Default from the Clerk on January 20, 2011, but the Collins' have yet to seek a judgment against them. This discussion, therefore, pertains only to Marix Servicing, LLC.

[3] Unless otherwise noted, all facts are uncontested and provided by the parties in Adv. Case 10-02064, Joint Pretrial Memorandum, (March 12, 2012).

[4] Consented to Motion for Relief from Stay (dated April 30, 2008); Order Granting Consented Motion for Relief from Stay (dated May 1, 2008), Case No. 08-20315.

[5] Plaintiff's Complaint, Exhibit 4 (dated December 1, 2010), Adv. Case No. 10-02064.

making future mortgage payments.[6] Additional information about the assignment, alternatives to foreclosure, and property insurance, was provided in subsequent letters. Included in all but one letter was a generic disclaimer stating that the communications were not attempts to collect debts from customers in pending bankruptcy cases, or those who had already obtained a discharge under the Code.[7]

In response to Marix's communications, the Collins' reopened their bankruptcy case and commenced this adversary proceeding, seeking sanctions pursuant to 11 U.S.C. §§105 and 524 for contempt on account of Marix's asserted discharge violations.

## Discussion

### 1. 11 U.S.C. §§105 and 524

This court has written extensively on contempt arising from violations of the discharge injunction. See In re Canning, 442 B.R. 165 (Bankr.D.Me. 2011), *aff'd*, 462 B.R. 258 (1st Cir.BAP (Me.) 2011); In re Pratt, 324 B.R. 1(Bankr.D.Me. 2005), *aff'd*, Pratt v. Gen. Motors Acceptance Corp. (In re Pratt), 2005 WL 1961341 (D.Me. 2005), *rev'd*, 462 F.3d 14 (C.A.1

---

[6] Referenced letters appear in Plaintiff's Amended Complaint Exhibits 6 – 12, (April 4, 2011), Adv. Case 10-02064.

[7] In its Validation of Debt letter, Marix wrote:

> Please note that notwithstanding anything herein to the contrary, if you have filed a bankruptcy petition and there is either an "automatic stay" in effect in your bankruptcy case or you have received in that case a discharge of your personal liability for the obligation identified in this letter, we may not and do not intend to pursue collection of that obligation from you personally. If these circumstances apply, this notice is not and should not be construed to be a demand for payment from you personally. Unless the Bankruptcy Court has ordered otherwise, however, please also note that despite any such bankruptcy filing, whatever rights we hold in the property that secures the obligation remain unimpaired.

Similarly, in the letters pertaining to obtaining fire insurance on the property, Marix stated:

> This communication is from a debt collector but does not imply that Marix Servicing, LLC is attempting to collect money from anyone whose debt has been discharged pursuant to (or who is under the protection of) the Bankruptcy Laws of the United States; in such instances, it is intended solely for information purposes regarding insurance coverage on your property.

See id at Exhibit 7.

(Me.) 2006). The discharge injunction arises under 11 U.S.C. §524, [8] and is enforced by the bankruptcy court's contempt power via §105. See Pratt v. General Motors Acceptance Corp. 434 F.3d at 21 (stating that §105 empowers the bankruptcy court to issue orders, processes, or judgments necessary or appropriate to carry out the provisions of the Code); Bessette v. AVCO Fin. Svcs., 230 F.3d 439, 444 (1st Cir. 2000); see also In re Schlichtmann, 375 B.R. 41, 94 (Bankr.D.Mass. 2007). A creditor violates the discharge injunction when it: (1) commits an act that violates the discharge injunction with the general intent to commit the act and (2) acts with knowledge of the discharge order. See In re Schlichtmann, 375 B.R. at 96; Pratt, 462 F.3d at 19. To be contumacious, the creditor's action must operate to coerce or harass the debtor improperly. See id. The First Circuit Court of Appeals defined the "objectively coercive" standard in Pratt v. Gen. Motors stating that "even legitimate state-law rights exercised in a coercive manner might impinge upon the important federal interest served by the discharge injunction, which is to ensure that debtors receive a 'fresh start' and are not unfairly coerced into repaying discharged prepetition debts." 462 F.3d at 19. While there appears to be no parallel First Circuit definition for harassment, Congress clearly intended that any behavior engaged in by a creditor that pressures a debtor to repay a discharged debt in any way is prohibited by §524.[9]

---

[8] 11 U.S.C. §524 states:
 (a) A discharge in a case under this title -

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived ....

[9] See Senate Report No. 95-989 ("[11 USC 524(a)] has been expanded… to cover any act to collect, such as dunning by telephone or letter, or indirectly through friends, relatives, or employers, harassment, threats of repossession, and the like. The change is… intended to insure that once a debt is discharged, the debtor will not be pressured *in any way* to repay it." (emphasis added)).

The debtors carry the burden of proof to show that Marix violated the discharge injunction, and that its actions rose to the level of coercion or harassment required to support a finding of contempt.[10]

Marix does not dispute that it intentionally sent a series of letters to the Collins' after they had received their discharge, nor that it had notice of the Collins' discharge. The sole issues are of fact: whether Marix actions amounted to pressuring the Collins' with respect to the discharged debt, and if so, if those actions were sufficiently coercive or harassing to constitute a violation of the discharge injunction.

2. Effects of Foreclosure and Discharge on the Rights of the Collins'

A bankruptcy discharge relieves the debtor of *personal* liability for pre-petition debts. Absent avoidance or modification, a discharge does not affect a secured creditor's lien in its collateral; the lien survives and is enforceable after the bankruptcy proceeding, or after obtaining relief from the automatic stay, in accordance with state law. In re Canning, 442 B.R. at 170; In re Pratt, 462 F.3d at 17. Therefore, a mortgagee may lawfully pursue its *in rem* rights through foreclosure after a discharge has entered, or after obtaining relief from the automatic stay, but may not pursue a discharged debtor for repayment of the note.

Maine property law requires mortgagees to foreclose on their collateral through a civil action. See 14 M.R.S. §6321. Once a foreclosure judgment has been issued by the court, the mortgagor has 90 days to redeem the property, unless an appeal is taken. 14 M.R.S. §6322. After the expiration of that period, the rights of the mortgagor in the real property are extinguished.

---

[10] The measure of the debtor's burden in proving contempt of the discharge injunction ("preponderance" vs. "clear and convincing") is unsettled in this circuit. See In re Canning, 442 B.R. at 170. A determination of the

See Duprey v. Eagle Lake Water and Sewer Dist., 615 A.2d 600, 604 (Me. 1992); cf, Canning, 442 B.R. 165; Pratt, 324 B.R. 1.[11] Therefore, absent exceptional circumstances that may give rise to certain equitable rights, the combination of bankruptcy and foreclosure serves to extinguish both the personal liability and property rights of a mortgagor, or, stated another way, the combination serves to extinguish both the mortgagor's ownership and contract obligations. See 11 U.S.C. §727(b); Martel v. Bearce, 311 A.2d 540, 543 (Me. 1973).

In this case, the Collins' ownership of the Lyman property was extinguished on January 28, 2009 when the redemption period expired after the foreclosure judgment issued in favor of Citicorp. They did not initiate an appeal, and they had vacated the property. At no point had the Collins' pursued or suggested they might pursue, the federal, post-judgment/pre-foreclosure cure remedy provided by §1322(c)(1). Their personal liability on the note terminated when they received their bankruptcy discharge, and they had the right to expect their "fresh start" as contemplated by the Code. See Bessette v. Avco Fin. Svcs., Inc., 230 F.3d 439, 443-44 (1st Cir. 2000). Marix's letters, all arising well after the bankruptcy discharge had entered and the Collins' redemption period had expired, clearly violated the discharge injunction. Marix had actual notice of the Collins' discharge. Marix intentionally sent them letters pertaining to a note they had no personal liability on, or, taking their arguments at face value, information on property they no longer had any rights in. They debited the Collins' discharged account with insurance obligations that were the responsibility of the mortgagee after January 28, 2009.

---

appropriate burden in this case is unnecessary. The facts are uncontested and, thus, clearly established.

[11] The present situation is distinguishable from that found in Canning or Pratt. In those cases, the secured creditors had not foreclosed on, or repossessed, the collateral. In those cases, I held that the ownership obligations of the debtors continued, even though their personal liability had been discharged.

Marix points out the disclaimer language contained in the letters, and argues that not only does the presence of the language make the content of the letters acceptable under the Code, but that "the content of the Letters [sic] are much kinder and gentler than language which this court has previously held did not violate Bankruptcy Code prohibitions." Brief of Defendant Marix Servicing, LLC., Pg. 12, Adv. Case 10-2064. However, Marix can point to no language in the Code that permits a party that has no contractual or *in rem* relationship to a discharged debtor to send letters asserting such a relationship. Furthermore, while the presence of disclaimer language has operated to mitigate a finding of harassment or coercion in previous cases, it does not do so here. Marix had no reason whatsoever to send these letters to the Collins'. In light of the Collins' discharge, and the actual notice Marix admits to having of it, purposeless letters relating to past debts and obligations constitute harassment proscribed by the discharge injunction.

3. Letters not Required Under Other State and Federal Laws

Marix contends that several of the letters sent to the Collins' contained information required to be provided by a variety of state and federal laws. Considering the utter absence of an obligation owed to Marix by the post-bankruptcy, post-redemption, Collins', it would seem a waste of time and resources to enact and enforce legislation requiring unnecessary notices to non-obligors and non-owners. And, in fact, a close reading of the laws and regulations cited by Marix reveals that none of the letters at issue here were obligatory.

Marix asserts that the Maine Fair Debt Collection Practices Act (FDCPA), the Real Estate Settlement Procedures Act (RESPA), the Gramm-Leach-Bliley Act, and the Home Affordable Modification Program each requires the notices contained in letters sent to the Collins'. This is not the case. For example, the Maine FDCPA requires certain notices sent to

consumer debtors within 5 days of an initial communication in connection with collecting a debt. 32 M.R.S. §11014(1). "Debt" is defined, in part, as an "obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services that are the subject of the transaction are primarily for personal, family or household purposes, whether or not the obligation has been reduced to judgment." 32 M.R.S. §11002(5). There is no debt here. There is no alleged obligation. Furthermore, Marix asserts that it was never attempting to collect a debt from the Collins'. But, if there was no debt, and Marix is not attempting to collect anything, than the notice required by 11 M.R.S. §11014(1) was clearly not required. A similar reading of RESPA, [12] the Gramm-Leach-Bliley Act,[13] and the Home Affordable Modification Program Handbook[14] reveal similar findings.

Marix's repeated communications to the Collins', sent after both their personal liability and their ownership of the mortgaged premises were extinguished constituted harassments violative of the discharge injunction. Marix was not free to simply treat the Collins' like "any other debtor" (viz., as if there had been no bankruptcy) when, in fact, they were no longer debtors at all. The Collins' deserved a fresh start without being harried by their former creditor.

Conclusion

---

[12] See 12 U.S.C. §2605(i)(3) (defining "servicing" as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan..."); Daw v. Peoples Bank Trust Comp., 2001 WL 195077 (C.A.7 (Ind.)) ("Once [the Debtor] defaulted, there were no longer any scheduled periodic payments to make or collect, and thus there were no servicing rights to assign, sell, or transfer. The assignment is beyond the scope of §2605(b).")

[13] See 15 U.S.C. §6809(11) (defining "time of establishing a customer relationship" as "the time of establishing the *credit relationship* with the consumer" (emphasis added)). No credit relationship exists between the Collins' and Marix.

[14] See Making Home Affordable Program, Handbook for Servicers of Non-GSE Mortgages, Version 2.0 as of September 22, 2010, https://www.hmpadmin.com/portal/programs/docs/hamp_servicer/mhahandbook_20.pdf, §1.2 ("Whether a borrower can qualify for HAMP if the mortgage loan is currently in the redemption period after a foreclosure sale is dependent on the amount of time remaining in the redemption period and other legal requirements of the state in which the property is located."); §5.3 "Occupancy Verification" ("The servicer must obtain a credit report for each borrower or a joint report for a married couple who are co-borrowers to confirm that the property securing the mortgage loan is the borrower's principal residence.") The parties agree that the redemption period had expired for the Collins' at the time Marix sent them letters, and that they no longer lived on the property.

For the reasons set forth above, I find and conclude that Marix violated the discharge injunction. A hearing to determine compensatory sanctions will be scheduled forthwith.

| | |
|---|---|
| July 12, 2012 | /s/ James B. Haines, Jr. |
| Date | James B. Haines, Jr. |
| | U.S. Bankruptcy Judge |